## MRS. B. LORENZEN v. A. A. WOODS.

1. Where the true condition of rented premises can be readily observed at the time of leasing, the tenant cannot subsequently complain of a defect in the drainage.

2. The mere fear that, in the future, a tenant or his family may be affected injuriously by the defective drainage of rented premises, affords no ground for damage.

3. Where rented premises are in need of necessary repairs, the remedy of the tenant is to duly notify the landlord; and if the latter fails to make them, the tenant may then apply the rent due, so far as necessary, to such repairs.

4. In such case, where there is a lease, and the amount of the entire lease is sufficient, it makes no difference that only a month or two of the rent is actually due; the tenant has the security of the rent for the whole term.

5. Where the tenant has not so notified the landlord, and, if necessary, made the repairs himself, he cannot refuse to pay the rent as it falls due.

6. To ascertain what is really demanded by a litigant, the prayer of his petition or answer must be examined.

7. The sweeping prayer for *general relief* cannot be made to cover a relief which is primary and important.

8. A defendant advancing counter claims, either by way of reconvention or compensation, must comply with all that is required of an actual plaintiff.

9. In every case, the pleading must state clearly what is the thing demanded, leaving in ambiguity nothing that is material.

10. This court will enforce strictly the laws of the State relative to pleadings.

11. A city ordinance forbidding the erection of buildings upon lots until such lots have been inspected, and a certificate of proper grading has issued, cannot apply to houses erected before its passage.

12. The fact that houses, erected before the passage of such an ordinance,

have not under them lots that have been graded and inspected in accordance with the provisions thereof, affords-no reason to the tenant for refusing to pay the rent stipulated.

13. The ordinance of the city of New Orleans, authorizing the Board of Health to inspect and condemn premises which are in an unhealthy condition, authorizes said board to cause such premises to be vacated and closed, so to remain until properly cleansed or repaired. Such a law does not justify the tenant who has not had the premises condemned, and who has not vacated, to refuse the payment of rent.

*Appeal from Civil District Court, Division C. Houston, Judge.*

*Julius Aroni, W. F. Mellen* for appellant.

*J. Ad. Rozier & V. J. Rozier* for defendant.

ROGERS, J.—The plaintiff leased to defendant, for a period of three years from October 1, 1881, the premises on St. Charles street, in this city. Two months' rent was paid by defendant, when a dispute arose in regard to certain repairs and drainage work required, as alleged by defendant, to make the house tenantable. The first notice is that given by defendant on December 5. On December 14th following the parties agreed to change the condition in the term of lease, reducing it from three years to one year. As appears, certain repairs were made by plaintiff. The rent due on January 1st, for the month of December, was not paid, and on the 7th of that month a suit was instituted for the full amount due on the contract of lease. On January 9 defendant again writes plaintiff that the repairs she had caused to be made had been improperly made; that the condition of the property required the necessary repairs previously specified, and that unless at once made defendant would make the repairs and deduct the amount from the rent.

Defendant has never made the repairs, has paid no rent, and still remains in the house. The only serious question raised is that of the defective drainage.

Defendant does not ask to have the lease annulled. *He intimates he has that right,* but contents himself with a prayer for damages.

The rented premises stands on pillars from three to four

feet high, giving full ventilation, and affording every facility for obtaining a perfect view of the house and the condition of the ground underneath. If, as contended, the lot is much lower than the banquette, such a condition was, by mere examination, evident, and required not skill, but mere ordinary diligence, and an examination would have informed defendant of the true condition. On this point there can be no doubt; on other matters the conflict in the testimony justifies some doubt.

The defendant has suffered no damages—this the district judge found; and the mere fact that he anticipates the possibility of climatic or local disorders subsequently developing disease in himself and family, cannot warrant a judgment in his favor.

It would be an idle inquiry to enter into and discuss the theory of possible illness, in the presence of an admitted immediate healthful condition. No law would compel, neither would it warrant, a person in submitting himself or family to the perils of disease; but when he assumes the risk, and, as in this case, does nothing to remove himself from the threatening circumstances, the law cannot listen to his fears, nor award a relief for anticipated damage.

There is no doubt the rent is due—it is admitted; the necessary repairs claimed have not been made; not one dollar has been paid out by the tenant; nor is it shown he ever did more than obtain an estimate from a builder of what the repairs would cost.

The tenant is not without protection. He is authorized by law to make the repairs, if necessary ones, and deduct from his rent, in all cases when the landlord refuses to make them. And defendant in this case, while his monthly rental was only sixty dollars, held by a lease of which only two months had passed: he had ample security for the two hundred dollars, or so much thereof as was legal, estimated as the costs of needed repairs. C. C. 2694; Lewis v. Pepin, 33 La. An. 1422, and authorities there cited. To permit a party defendant to

recover in a proceeding like the present, would virtually allow him to keep both premises and rent.

We have not reviewed the evidence in this case, in so far as it bears on the merits of the defendant's demand for repairs, whether necessary or not necessary. The pleadings present the pure question of law governing the relations of landlord and tenant. "Does a failure of the lessor to make necessary repairs, sustain a claim for damages by the lessee, when the rent is sufficient to enable the lessee to make them?" The answer must be in the negative, *because*, "the lessee is authorized to make them himself, and to deduct the cost from the rent."

Judgment reversed, and judgment is now rendered for plaintiff as prayed for, with costs of both courts.

## ON APPLICATION FOR REHEARING.

McGLOIN, J.—Defendant, on application for rehearing, insists that there was error in our opinion first given herein, where it is declared that said defendant does not expressly pray for the annulment of the lease. Of course, to ascertain the nature of the relief which a litigant demands, we must examine the prayer, which concludes the principal pleading, be it a petition, or an answer.

If a defendant, either by way of reconvention or demand in compensation, assumes, on his part, the position of a plaintiff, he must comply with all that is required by the law of a plaintiff. C. P. Arts. 365, 328.

Where a petition is presented it must state clearly what is the nature of the demand, and leave in ambiguity nothing that is material. C. P. Arts. 171, 172, 173, 319.

The following is a brief, but full synopsis of the prayer of defendant in this case:

"Defendant prays for the rejection of plaintiff's demand, with costs, and that his own reconvention be maintained, and that Blanche Lorenzen be condemned to pay plaintiff in reconvention $500 damages, and the further sum of $120, rent

Lorenzen v. Woods.

already paid and which should be refunded, making a total of $620, with interest from October 1st, 1881, until paid, and costs; and that in case said lease is not annulled by the judgment of the court, and the said plea in reconvention be not maintained, then that defendant be declared entitled to make the necessary repairs, etc., amounting to $200, from the amount of rent, in case respondent should be condemned to pay any rent; and for further general relief, which the nature of the case may require."

Certainly there is here no formal and express prayer for the annulment of the lease, or any expression of a desire on the part of defendant that it should be so annulled. As for the sweeping prayer for general relief, we do not consider it consonant with due notice and fair pleading to permit a defendant to secure—or, perhaps, we might say, veil—under such a vague and sweeping clause, a relief which is primary and important. To do so, would be to declare that an answer need in no case specify the particular character of relief that is expected, and that the pleader may, in all cases, content himself with such a sweeping conclusion alone, and then stand prepared to shape his demand according to his pleasure and the exigencies of his case, as the same may develop upon the trial. It is evident, that if language so vague can cover a demand to annul a lease, it should equally well cover one for damages, or for any other affirmative relief which it is open to a defendant to claim, provided the necessary facts were alleged in the body of the answer, either directly or indirectly.

Nor does the body of the answer in this case do more than to declare, in this particular connection, that the alleged default of plaintiff (Mrs. Lorenzen) "*entitles* defendant to have said lease annulled and rescinded."

If, under such a state of affairs, we were to recognize the defendant as one demanding the nullity of a lease, we would certainly be casting wide the door to ambiguity in pleading, and consequent surprise and injustice. This we are not prepared to do. On the contrary, we will, as declared in Alford, Bettis & Co. *v.* Hancock, 1 McGloin, 280, "strictly enforce the laws of the State regulating pleadings."

The defendant claims that the repairs and works necessary amount to $200. Of these, independant of the damage, or filling, all that he claims does not exceed fifty dollars, according to the estimate of the architect, Carter, whom he caused to examine the premises, and tendered as a witness. At the time of the institution of this suit, one month's rent, $60, was actually due, a sum sufficient to meet the expense of repairs to the house proper; and as to such repairs, the question does not arise whether a tenant can be held to make repairs in amount beyond what is actually due at the moment such repairs become necessary.

With regard to the drainage, we do not see how the alleged defect can be held to have been hidden. Many witnesses testified *pro* and *con* upon this issue, and they all seem to have been able to examine without great difficulty. They did not have to rip up or tear away in order to see the condition of things under the house, which stood upon piers, three or four feet above the ground. Indeed, the witness Rondeau, an employee in the city surveyor's office, and a witness of defendant, goes so far as to declare that nobody that was not blind, could help seeing the depression in the ground just under the house.

If the general level of the yard or under the house was a material matter, and it was open to inspection, defendant, in making his lease, should not have omitted to examine it; and having failed to do so, he cannot complain after the execution of his contract. He rented the house as it was, and it is to be presumed that the rent was fixed in view of all the circumstances; and to permit him to demand an extensive change in the grade of the lot or lots, would be to allow him, without an increase of rent, to receive something better than that what his lessor had agreed to deliver.

The city ordinance No. 6022, sec. 12, to which defendant refers, can have no bearing upon this case. That section is as follows:

"No lot shall be used for building purposes in the city of New Orleans, until the same shall have been inspected by the

city surveyor, who shall give a certificate that such lot is filled above the level of the banquette, and graded so as to be effectually drained into the street gutters ; and upon such certificate all owners, agents, contractors and builders are required to obtain permits from the Board of Health before commencing the erection of any buildings."

This ordinance clearly relates only to buildings that are to be erected after its enaction ; and as it bears official date only June 5th, 1879, long after the erection of the house leased to defendant, it can have no application. Before the adoption of this ordinance, thousands of houses were erected, which, of course, could not have been built in compliance with a municipal law not in existence, and the fact that in their building such law was not considered, is no reason for non-payment of the rents of such premises, and no reason why a tenant should enjoy a house, etc., that was better than the one for which he had contracted.

The section of the ordinance cited, which applies to the house occupied by defendant, and to other houses built before 1879, is evidently section 13, which authorizes the Board of Health, in its discretion, and for the protection of life and health, to declare any structure unhealthy and order it to be at once vacated and closed ; and forbidding premises so treated from being again occupied until they have been cleansed or repaired so as to be fit for human habitation.

Had the defendant considered the premises he occupies unhealthy, notwithstanding the fact that they were so when rented, he might and should have applied to the Board of Health for its intervention under the powers thus conferred ; and, of course, so long as he was absent from said property he could not be held for rent; or, if the Board of Health simply declared the place unhealthy, without ordering its vacation, there might be ground for the complaint now urged. It appears, however, that the proper sanitary inspector of said Board of Health, and, as such its, lawful agent and representative, did examine said premises, and find them suitable, with

only one objection, which, on his recommendation, was remedied as he directed. Said inspector has so certified, and so sworn as a witness, and we give weight to his finding, which is that of the Board of Health.

We do not consider, so far as the municipal law has been shown to us in this case, that houses erected before 1879, must be in all respects conformable to section 12 of said ordinance. Such houses and premises, to be affected, must be in fact unhealthy, and be so found by the Board of Health; and this condition of unhealthfulness must exist intrinsically, and is not to be determined by reference to any arbitrary and universal law or regulation.

It is therefore evident, that defendant has shown no right to damages against the plaintiff, and that our ruling as originally given is correct. Nor do we consider him entitled to any return of rents paid, nor to any deduction from the rent actually due. The law (C. C. Art. 2694) authorizes the tenant to deduct sums he *has paid out* for necessary repairs, after due notice to the lessor, and not sums which he expects to so disburse. If a tenant, having a sufficient sum, out of the rent, in his hands to make necessary repairs, through error, fear or other motive, fails to cause them to be actually made, he cannot seek relief under the article quoted, for it is not applicable to his case, as he has chosen to present it.

The application for a rehearing in this case is therefore refused.